## Commonwealth *v.* Scherer, Appellant.

*Criminal law—Murder—Defense — Insanity — Charge — Inadequacy—Failure to request—Exceptions—Degrees—Evidence—Premeditation—Theory of case—Appeal—Assignments of error.*

1. On the trial of an indictment for the murder of the prisoner's wife, the prisoner testified that at the time of the killing he was aroused from sleep by some noise behind him, and not being fully awake suddenly turned and fired his pistol without seeing his wife, or intending to harm her. The evidence for the Commonwealth tended to show the prisoner fired three shots, each with deadly aim; that he had recently bought a new revolver and made covert threats that something serious was to happen; that a letter written by him and addressed to his sister was found in his pocket, expressing regret for what he was to bring upon his family, and requesting that they visit him in jail, and arranging for the custody of his children; and that he stated immediately after he had surrendered himself that he had shot his wife because of her intimacy

with a barber across the street from his house. The prisoner was sober at the time of the killing. There was some evidence of his insanity. *Held,* that a conviction of murder of the first degree should be sustained.

2. In such a case where the prisoner's counsel in his opening to the jury stated that the defense did not claim the prisoner was insane, but immediately thereafter, did state to the court, at side bar, that the defense was partial insanity, and evidence on that subject was introduced, the court committed no error in submitting the question of the prisoner's insanity to the jury, and this is especially the case where the prisoner's counsel made no objection at the time.

3. Where counsel without objection permits the court to submit the case to the jury upon a certain theory, and takes his chances of a verdict, he should not be heard to complain.

4. Where only a general exception is taken to a charge only basic fundamental errors can properly be urged.

5. Where a charge is alleged to be inadequate it should be set out in the assignment.

6. Where counsel desires from the court a fuller reference in the evidence to the charge, it should be requested, and reliance should not be based on a mere general exception.

7. A trial judge in a murder trial cannot be convicted of error in omitting to include a verdict of "not guilty" among the different verdicts that could properly be rendered, if it appears that he submitted to the jury the question as to whether the killing was accidental and charged that if there was a reasonable doubt in their minds, it was their duty to resolve that doubt in favor of the defendant, and return a verdict of not guilty.

8. On the trial of an indictment for murder, a letter found in the prisoner's pocket, is competent evidence, if it appears that it was written by him, that it tended to rebut his testimony, and to show premeditation, and that it also bore upon his mental condition.

9. A wife's alleged misconduct with another affords no excuse to her husband for taking her life.


Argued October 22, 1919. Appeal, No. 102, Oct. T., 1919, by defendant, from judgment of O. & T. Allegheny Co., June T., 1919, No. 15, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Charles E. Scherer. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Indictment for murder.   Before LANGHAM, P. J., specially presiding.

Verdict of guilty of murder of the first degree upon which judgment of sentence was passed.  Defendant appealed.


*Errors assigned,* among others, were as follows:

2. The learned court erred in its charge as a whole in that as a whole it is misleading, in that he instructed the jury that the defense was insanity, where in fact the defendant by counsel had repudiated this defense and asserted that the shooting took place when he was suddenly awakened from sleep and before the mind had awakened to conscious action; and before reason had resumed its sway over the mind.

3. The charge of the learned court is inadequate and misleading in that the natural effect of the charge was to lead the jury to think that there could be only one of four verdicts,—"Murder of the first degree; murder of the second degree; voluntary manslaughter; or not guilty by reason of insanity.

6. The learned court erred in its charge in saying: "Now, gentlemen of the jury, when you retire to the jury room, you should first consider the question of the degree or extent of unsoundness of mind necessary to acquit a person charged with homicide."

8. In effect, in admitting the letter written by the person mentioned in the opinion.


*R. H. Jackson,* for appellant.—The jury was left to its own devices to apply the law on insanity given them by the court.  This has been held ground for reversal in civil cases: Earle v. Arbogast, 180 Pa. 409; Com. v. Kaiser, 184 Pa. 493; N. Y., etc., R. R. Co. v. Enches, 127 Pa. 316.

The charge was not only inadequate, but positively misleading: Reber v. Herring, 115 Pa. 599; Myers v.

Com., 83 Pa. 131; Com. v. Silcox, 161 Pa. 484; Com. v. Washington, 202 Pa. 148.

Where the defense was not insanity but a state of mind that precluded malice and premeditation—the omission to refer to this as a defense or give any instruction relative to it is clearly reversible error: Taylor v. Fuller, 5 Pa. Superior Ct. 193; Zugsmith v. Rosenblatt, 15 Pa. Superior Ct. 296; Rothschilds v. McLaughlin, 6 Pa. Superior Ct. 347; Stewart v. Line, 11 Pa. Superior Ct. 345; Meyers v. Com., 83 Pa. 131; Com. v. Silcox, 161 Pa. 484; Earle v. Arbogast, 180 Pa. 409.

*Samuel H. Gardner,* Asst. District Attorney, with him *Harry H. Rowand,* District Attorney, for appellee, cited: Meyers v. Com., 83 Pa. 131.

OPINION BY MR. JUSTICE WALLING, January 5, 1920:

This is a case of wife murder. The defendant, Charles E. Scherer, married the deceased in 1909, at Wilmington, North Carolina. He was a widower with seven children and was twenty years her senior. They resided at Wilmington until 1917 when they removed to Pittsburgh. She proved an excellent stepmother and they seemed to live happily for some years, but he became intensely jealous and when in liquor was abusive. On such occasions he used threatening language and sometimes menaced her with a revolver, so that she repeatedly caused his arrest and more than once temporarily separated from him. About a month prior to the homicide he became jealous of a barber, whose shop was opposite their home, and quit work that he might watch his wife and the barber, and he claims to have discovered some intimacy, not criminal, between them. The alleged intimacy was denied by his wife, and, on April 26, 1918, they quarreled about it, and she threatened him with a gun. That night she slept on the davenport in the living room, which he entered early the next morning, and, after sitting some time by the fire, arose and shot her

three times through the body, with a 38-calibre revolver, causing her death. There is no claim of self-defense, in fact the wife was unarmed and apparently in the act of dressing. Without waiting to see the effect of the shots, he took his hat and overcoat and went to a fire engine house where he called an officer and gave himself up.

At the trial he testified, in substance, that while sitting before the fire that morning he fell asleep and was aroused by some fuss or noise behind him and, not being fully awake, suddenly arose, turned around and fired without seeing his wife or intending to harm her. But this story cannot be accepted in view of the facts that he fired three shots each with deadly aim, that he had recently bought a new revolver and made covert threats that something serious was to happen, that a letter, written by him and addressed to his sister, was found in his pocket, expressing, inter alia, regret for what he was to bring upon his family and requesting that they visit him in jail, and arranging for the custody of his children, and of the further fact that he stated both at the engine house and police station that he shot his wife because of her intimacy with the barber. That he made such statement is demonstrated by the fact of the barber being arrested and taken to the station in the patrol with the defendant. The latter was perfectly sober and there is no shadow of defense to what had every element of a deliberate murder, except that of insanity, of which there was some evidence. The defendant was convicted of murder of the first degree and this appeal is from the judgment entered thereon.

A careful examination of the entire record fails to disclose any substantial error. True, defendant's counsel in his opening to the jury stated that the defense did not claim the prisoner was insane, but immediately thereafter did state to the court, at side bar, that the defense was partial insanity, and the greater part of the evidence offered for the defendant was relevant only be-

cause it bore on his mental condition.   That was especially true of the testimony of his sister and other relatives and of Mr. Kileim.   Under the evidence it was the duty of the trial judge to submit to the jury the question of defendant's insanity and to explain to them the law upon that branch of the case, which was properly done.   It is not error for the court to charge the jury upon the law governing the defense of insanity when that question is raised by the evidence.   Here the law was properly stated, hence there is no just ground for complaint upon that branch of the case.   In view of the testimony the trial judge did not err in stating to the jury that the defense claims the defendant is not guilty by reason of insanity; that is especially so as defendant's counsel made no objection to such statement.   When counsel without objection permits the court to submit the case to the jury upon a certain theory, and takes his chances of a verdict, he should not be heard to complain.

It is contended that the charge as a whole was inadequate; if so, it should be, but is not, set out in the assignment (Sikorski v. Phila. & R. Ry. Co., 260 Pa. 243; Com. v. Russogulo, 263 Pa. 93, 100); aside from that, an examination of the charge shows no merit in such contention.   Certainly there are no basic or fundamental errors in the charge and, where as here only a general exception is taken, no others can properly be urged: Sikorski v. Phila. & R. Ry. Co., supra; Mackowski v. Phila. R. T. Co., 265 Pa. 34.   Defendant submitted no requests written or oral and took his chances with the jury on the charge as delivered, and, as it is free from substantial error, he has no valid complaint.   Had he desired a fuller reference to the evidence it should have been requested: Com. v. Razmus, 210 Pa. 609.

Complaint is made that the trial judge in stating to the jury the different verdicts that could properly be rendered under the evidence omitted to include that of "not guilty"; but he did submit to them the question as to whether the shooting was accidental and also said, "And

if such a doubt [a reasonable doubt] arises in your minds, it is your duty under the law to resolve that doubt in favor of the defendant and return a verdict of not guilty," which answers that complaint.

The letter found in defendant's pocket was admittedly written by him and was competent evidence, as it tended to rebut his testimony and to show premeditation and also bore upon his mental condition. The order of proof is a matter for the trial judge: Aland v. Pyle, 263 Pa. 254.

The wife's alleged misconduct, if true, afforded no excuse for taking her life, and, as above stated, there is no merit in the theory of accidental shooting, for defendant's own account of the occurrence shows he was awake and conscious. The jury had the full benefit of his version of the affair and there is no reason for granting a new trial.

The assignments of error are overruled, the judgment is affirmed and the record is ordered remitted for the purpose of execution.