ELSIE GAUDREAU, PROSECUTRIX-APPELLANT, v. ECLIPSE PIONEER DIVISION OF BENDIX AIR CORPORATION, DEFENDANT-RESPONDENT.

Argued May 19, 1948—Decided September 3, 1948.

For the prosecutrix-appellant, *Kalisch & Kalisch* (*Isidor Kalisch,* of counsel).

For the defendant-respondent, *Walter H. Jones.*

The opinion of the court was delivered by

FREUND, J. This is an appeal by Elsie Gaudreau from a judgment of the Supreme Court affirming a judgment of the Workmen's Compensation Bureau, which dismissed her petition for compensation by reason of the death of her husband, Hector Gaudreau, on April 14th, 1945, caused by an accident arising out of and in the course of his employment by respondent.

The respondent paid appellant compensation as the widow of Hector Gaudreau for 96 weeks until February 14th, 1947, when it discontinued the benefit payments, whereupon appellant filed her petition for compensation. The only issue raised in the answer was that "respondent requires proof that petitioner is still the unmarried widow of decedent." The cessation of payments occurred about two years after the death of decedent, when a son of appellant and decedent, Hector Gaudreau, Jr., then seventeen years of age, was injured in an automobile accident. By an unusual coincidence, the owner of the automobile was insured by the same insurance company which was respondent's compensation insurance carrier. In the settlement of the son's claim, the adjuster obtained the release and indemnity agreement of his "parents," his mother, the appellant, who signed as "Mrs. William Bittner" and William Bittner. The insurance company taking this to signify the remarriage of appellant discontinued the compensation payments to her as the widow of Hector Gaudreau. At the hearing, appellant testified that she had not remarried since her husband's death; that she was not

married to William Bittner; that she was not Mrs. William Bittner; though she admitted that she, Mr. Bittner and and her son lived in the same house. Other than the aforesaid release, respondent offered no evidence or proof whatsoever to establish the alleged remarriage of appellant.

The Workmen's Compensation Bureau dismissed the petition and on appeal the Supreme Court affirmed, holding that the release did not establish the marriage, but did cast doubt on the appellant's widowhood and called for more of an explanation than was given.

The right of a widow of an employee to payments under the Workmen's Compensation Act, R. S. 34:15–1, et seq., the amount thereof, their duration and the contingencies upon which they shall cease, are all governed by the statute, R. S. 34:15–13; the act prescribes the qualifications of the beneficiaries and when they shall become disqualified. R. S. 34:15–13k provides that compensation payments to a widow shall run for three hundred weeks, but R. S. 34:15–13g provides that "* * * should the widow of a deceased employee remarry during such period, the right of such * * * widow to compensation under this section shall cease."

It is to be observed that it is the remarriage of a widow which terminates the payments and not any other relationship which she may enter into. The legislature having so provided, it is not for the court to terminate the benefit payments for any other reason. To constitute a bar to further compensation payments, the remarriage must of course be a valid one. Thus, in this state, since July 18th, 1939, R. S. 37:1–10, it means a ceremonial marriage, common law marriages being void since that date.

In the instant case, respondent admitted that it paid appellant compensation as the widow of Hector Gaudreau. Respondent ceased payments not upon proof of remarriage, but assumed such to be the fact from her signature, "Mrs. William Bittner," on the release of her son as above mentioned, and in its answer to the petition required proof that appellant was "still the unmarried widow of decedent."

Widowhood, like marriage, is a status which, once having been established, is presumed to continue until the contrary

is shown cr presumed from proven facts. *Hefele* v. *Hefele,* 110 *N. J. Eq.* 457; *Schuler* v. *Schuler,* 114 *Id.* 220; *Hoffmann* v. *Jinks,* 134 *Id.* 91. At the hearing before the Workmen's Compensation Bureau, appellant testified that she had not remarried since her husband's death, and, specifically, that she was not married to William Bittner and was not "Mrs. William Bittner." The signature of appellant, perhaps, warranted the inference by respondent that appellant had remarried; but it was merely an inference, not the establishment or proof of the fact of remarriage.

In these days, a signature or a name alone does not constitute proof of the true marital status of the person. Many a well-known woman retains her maiden name after marriage. It is, of course, common practice for a widow or a divorcee to continue to be known and referred to as "Mrs." And many a person uses an assumed name. The one is no more proof of the unmarried state than the other is of marriage. In either case, the marital status is merely an inference.

An inference is not a presumption nor has it the evidential effect of a presumption. *Bower* v. *Bower,* 78 *N. J. L.* 387. But even conceding to the inference here drawn by respondent the value and efficacy of a presumption, the respondent failed to discharge the burden imposed upon it by law. As already stated, respondent offered no proof or evidence of the remarriage of appellant, other than the release. A presumption is not evidence, but a rule concerning evidence. It places on the adverse party the duty of going forward with the evidence. However, a presumption ceases to operate as a factor and may be destroyed when it is met by positive and uncontroverted evidence. *Gulick* v. *Loder,* 13 *Id.* 68; *Snediker* v. *Everingham,* 27 *Id.* 143; *Voorhees* v. *Voorhees,* 46 *N. J. Eq.* 411; *affirmed, sub nom. Collins* v. *Voorhees,* 47 *Id.* 315, 555; *Dunn* v. *Gildman,* 111 *N. J. L.* 249; *Domanowski* v. *Prudential Insurance Co.,* 116 *Id.* 247; *Carroll* v. *Prudential Insurance Co.,* 125 *Id.* 397; *Ocean County National Bank* v. *Stillwell,* 123 *N. J. Eq.* 337.

Granting therefore for the purposes of this discussion that the signature of appellant raised the inference of remarriage,

her positive and uncontradicted denial thereof destroyed it. The burden then rested upon respondent to go forward with the evidence to establish a valid remarriage, *Bolmar* v. *Edsall*, 90 *N. J. Eq.* 299, in order to operate as a condition subsequent and thus a bar to continued compensation benefits. *DuPont DeNemours Co.* v. *Spocidio*, 90 *N. J. L.* 438; *Dubies* v. *Manufacturers Liability Insurance Co.*, 96 *Id.* 107; *Gilbert* v. *Gilbert Machine Works, Inc.*, 122 *Id.* 533. Appellant could do no more than deny her remarriage to prove her continued widowhood; while respondent could have produced a certificate or other competent evidence of appellant's marriage to William Bittner, if indeed such were the fact.

Appellant's admission that she lived in the same house as William Bittner could not deprive her of compensation payments as the unmarried widow of Hector Gaudreau. Even if we assume, *arguendo*, an illicit relationship, appellant's morals would be no bar to her receiving benefits under the Workmen's Compensation Act in the absence of a specific provision. *Neubeck* v. *Neubeck*, 94 *N. J. Eq.* 167.

We conclude that the Supreme Court erred in affirming the dismissal of appellant's petition by the Workmen's Compensation Bureau. The judgment will be reversed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, WELLS, DILL, JJ. 4.

*For reversal*—DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, JACOBS, FREUND, MCLEAN, SCHETTINO, JJ. 10.